No. 25-1566

_____

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FOURTH CIRCUIT

_____

Blagomir P. Shkodrov, Individually and as Personal Representative of

Stoyanka Dimitrova Shkodrova/Decedent,

Petra D. Fist, as Personal Representative of Decedent,

Plaintiffs-Appellants,

v.

Summer Carmichael, Outer Banks Health, Inc., ECU Health/EastCare, Inc.,
Chesapeake Hospital Authority, Inc., University Health Systems of Eastern
Carolina, Inc., Jeff Peter Vista, Linda Smith, Aaron Heide, James Heaton, Jennifer
Allen, Susanj Patel, Simone Patalinghug Montoya, Eastern Radiologists, Inc.

Defendants-Appellees.

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NORTH CAROLINA, RALEIGH, NC

_____

## APPELLANTS' INFORMAL REPLY BRIEF

### To Response Brief by Appellee Chesapeake Hospital Authority

_____

Petra D. Fist, Blagomir Shkodrov

Mailing Address: 1209 Kirkwood Hwy., Wilmington, DE 19805

Email: pdkfist1@gmail.com; Email: levski0777@gmail.com

Tel. 302-525-9302; Tel. 954-854-1912

# TABLE OF CONTENTS

I.    INTRODUCTION...........................................................................3

II.    SUMMARY OF REPLY.............................................................3

III.   REPLY TO CHA'S RESPONSE ARGUMENTS ......................................4

1.   CHA'S PROPOSAL THAT APPELLANTS CANNOT PROCEED PRO SE, WITHOUT QUALIFICATION, DOES NOT HAVE SUPPORT IN EITHER LAW OR FACTS ......................................................................4

2.   CHA'S PROPOSALS THAT APPELLANTS MUST SHOW INTENTIONAL MISCONDUCT TO ALLEGE EQUITABLE ESTOPPEL OR THAT APPELLANTS MUST DISCOVER CHA'S FRAUD ONLY AFTER THE EXPIRATION OF THE STATUTE OF LIMITATIONS TO ALLEGE EITHER FRAUDULENT CONCEALMENT OR EQUITABLE TOLLING LACK SUPPORT IN FACT OR LAW.............................................9

3.   CHA'S PROPOSAL OF BULK CATEGORIZATION OF NEARLY ALL CLAIMS AS WRONGFUL DEATH CLAIMS ALSO LACKS SUPPORT IN FACT OR LAW ......................................................................16

**IV.    CONCLUSION** ...........................................................................17

**CERTIFICATE OF SERVICE** ...........................................................18

APPENDIX ...........................................................................................19

## I.    INTRODUCTION

Appellee CHA[1] unavailingly maintains that the district court did not err when it dismissed (nearly 450 days after initiation) nearly all of Appellants' claims, because allegedly Appellants cannot proceed pro se and/or there is no alleged equitable exception for their 1-day delay in filing suit and nearly all claims are essentially wrongful death claims.

## II.    SUMMARY OF REPLY

Appellants can represent pro se their Mother's de jure estate where Appellants are the estate's sole beneficiaries and the estate lacks actual creditors.

---

[1] CHA, a partner-manager and member of the Outer Banks Hospital's Board of Directors, manages, directs and supervises its Outer Banks Health. The OBH's failures and the failures of its partner in owning the OBH, UHSEC/ECU Health, flow to CHA and give rise to CHA's further liabilities. N.C. Gen. Stat. 59-45.

CHA's persistent fraudulent concealments of the Decedent's transferred records, false misrepresentations in its own records and failure to timely render the Decedent's complete, including all radiology images, medical data, mislead Appellants into believing Appellees' false version of "unfortunate accident" and precluded them from filing earlier the wrongful death and EMTALA claims.

## III.    REPLY TO CHA's RESPONSE ARGUMENTS

## 1.    CHA's Proposal that Appellants Cannot Proceed Pro Se, Without Qualification, Does Not Have Support in Either Law or Facts

The district court did not address directly the issue of pro se representation, but rather opted to refer to it in the context of constructive fraud and then in a footnote assign it to nearly all claims while mischaracterizing the facts and misapplying precedent: "Plaintiffs, however, have not demonstrated based upon existing binding precedent that they may bring such a claim pro se. Wojcicki v. SCANA/SCE&G, 947 F.3d 240, 246-47 (4th Cir. 2020)" and then in footnote 13 "the court adheres to the prevailing circuit court precedent, which bars pro se representation of an estate "where the estate has outstanding creditors," without qualification. **(Id.)**[2]. Moreover, in the event **any** of plaintiffs' claims are not

---

[2] The district court persistently engaged in misconstruing both the facts and the law, e.g. "Plaintiffs cite two unpublished cases in this district where the court

subsumed within plaintiffs' wrongful death claims, contrary to the court's analysis herein, then such claims similarly must be dismissed on the basis that plaintiffs cannot represent the estate of decedent pro." DE 124 at 16. CHA does not dispute that Wojcicki dealt with non-attorney's representation of the U.S. government in a qui tam action under the False Claims Act and in dicta referred to non-attorney representation of an estate with additional of an estate: the word "creditor" does not appear in Wojcicki's decision so that to support CHA's position, as adopted by the court, that a non-attorney cannot represent an estate when the estate has outstanding creditors, without qualification. The district court took CHA's proposal that "[t]he exception allowing pro se representation of an estate applies only where there are no creditors, without qualification," impermissibly added it to the Wojcicki's decision and converted it into the prevailing precedent. DE105 at 6.

Moreover, the district court knew perfectly well that to begin with there are no "outstanding creditors" (with or without qualification to this estate): "Given the fictitious nature of their mother's paper estate and the fact that no settlement

---

"allowed the pro plaintiffs to proceed" in representing an estate. (Pl's Mem. (DE 74) at 7 (citing Avent v. State Farm Fire and Cas. Co., No. 5:16-CV-278-BO, (E.D.N.C. Sept. 18, 2017), and Procopio v. Super 8 Worldwide, Inc., No. 5:20-CV-101-BO, (E.D.N.C. Sept. 23, 2020))," to purportedly to defend their pro capacity to proceed when the Defendants raised these cases to show Plaintiffs' incapacity to sue and Plaintiffs argued in their responses that those are unavailing examples because the court in each case denied defendants' motions to dismiss and allowed the cases to proceed and that incapacity to sue is not properly decided in a motion to dismiss. DE 92 at 6.

proceeds would be considered assets reachable by creditors, Plaintiffs are in

essence representing their own interests. Given the fictitious nature of their

mother's paper estate and the fact that no settlement proceeds would be considered

assets reachable by creditors, Plaintiffs are in essence representing their own

interests. "In all courts of the United States the parties may plead and conduct their

own cases personally or by counsel ...." 28 U.S.C. § 1654. "[T]here is no question

that a party may represent his or her own interests in federal court without the aid

of counsel." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516,

522, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007) (citing 28 U.S.C. § 1654 ). "The right

to litigate for oneself, however, does not create a coordinate right to litigate for

others." *Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005).

Defendants are confused if they believe that Plaintiffs are litigating on Defendants'

behalf or on behalf of providers who have utterly failed to render any necessary

treatment (rather than keeping a body on a breathalyzer to put more distance

between the OBH's abysmal failure to care for their patient and the patient's time

of death at the co-partner's CRMC). Plaintiffs have indicated that there are no

other debts besides disputed debt related to their mother's debt." DE 97 3-4; please

*see* also Excerpt from DE 97 in Addendum. Even though Appellants have

consistently maintained: 1) that they are the only children of their widowed

deceased mother and the sole beneficiaries of her de jure estate; 2) that there aren't

any known creditors to the estate, other than potential creditors with invalid, disputed debt; 3) that even if there were actual creditors with claims filed against this paper estate with zero assets, any recovery from a North Carolina wrongful death suit would not be reachable by either potential or current (non-existent here) creditors, CHA misrepresented to the district court that "Plaintiffs admit that the estate has creditors," albeit it abstained from such statements in its response to this Court. DE 105 at 6, DE 97. CHA has never made a negative averment, supported by specific details, that there are any outstanding creditors of our Mother's de jure estate and therefore Appellants cannot proceed pro se. N.C. Gen. Stat.§ lA-1. Instead, Appellee CHA resorts to a new inapposite and non-precedential case in support of its general proposition that Appellants cannot sue on behalf of the estate. *McAdoo v. United States*, No. 1:12cv328, 2014 WL 359043, at *5 (W.D.N.C. Feb. 3, 2014) (where the Western District Court of North Carolina denied defendants' motion to dismiss and ordered plaintiff to obtain counsel because there were other[3] beneficiaries of the estate: "Thus, even if Plaintiff's

---

[3] In its reasoning, the court acknowledged precedent from the Second Circuit similar to the circumstances of the instant case: "It is only a legal fiction that assigns the sole beneficiary's claims to a paper entity—the estate—rather than the beneficiary himself. Accordingly, pro se representation is consistent with our jurisprudence both on the right to self-representation and on the prohibition of appearances by non-attorneys on behalf of others. Because the administrator is the only party affected by the disposition of the suit, he is, in fact, appearing solely on his own behalf. This being so, the dangers that accompany lay lawyering are outweighed by the right to self-representation, which we have described as "a right

brother did legally renounce his claim to the assets of the Estate, he did not renounce his share of the wrongful death proceeds by doing so."; directly citing to North Carolina precedent).

This Court has held that individuals like the Appellants, who are the only real parties of interest here, have long been guaranteed the right to self-representation, a right rooted in the Sixth Amendment and codified in 28 U.S.C. § 1654. *United States v. Lawrence*, 605 F.2d 1321, 1324 (4th Cir. 1979); *see* also *Faretta v. California*, 422 U.S. 806 (1975).

CHA's response fails to present any argument or applicable precedent to show that the district court's dismissal of any and all of the pro se Appellants' claims is not contrary to the facts, contrary to North Carolina law and contrary to this Court's precedent.

---

of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case." O'Reilly v. N.Y. Times Co., 692 F.2d 863, 867 (2d Cir.1982)." Id. *4.

**2.      CHA's Proposals That Appellants Must Show Intentional Misconduct to Allege Equitable Estoppel or that Appellants Must Discover CHA's Fraud Only After the Expiration of the Statute of Limitations to Allege either Fraudulent Concealment or Equitable Tolling Lack Support in Fact or Law**

Appellee CHA unavailingly argues that the district court applied correctly the doctrine of equitable estoppel, disregarding the court's prima facie mischaracterizations, e.g. "Plaintiffs do not allege conduct by defendants that caused plaintiffs to miss the filing deadline." DE 120 at 10. The record shows that Appellants repeatedly alleged that CHA's civil obstruction of justice, actual fraud through affirmative misrepresentations, material omissions and fraudulent concealments, coupled with CHA's constructive fraud, precluded Appellants from timely filing their claims of wrongful death and EMTALA, because Appellants have bought Defendants' jointly and consistently channeled false theory of "decent care but unfortunate accident" prior to the disclosure of the CRMC records in November of 2008[4]. DE 100 ¶ 30, 92, 93, 97, 98-106, 114, 118; DE 120 at 8-10. Later on, in a footnote the court acknowledged that it was aware of at least some of these allegations: "For defendant Chesapeake Hospital Authority, Inc., plaintiffs do not plausibly allege enough facts to support an inference that it is responsible for

---

[4] Even if Appellants had AI brains and eagle eyes to immediately spot the OBH's negligence and gross negligence in the afternoon of on February 1, 2022 when they received the first set of the OBH "records," that would still toll Appellants' 1-day delay. "An unfortunate accident" would not justify a wrongful death suit.

the alleged insufficient recordkeeping at Outer Banks Hospital that is subject of the allegations at paragraphs 98-106 of the complaint." DE 120 at 12. Plaintiffs in fact alleged actual fraud, constructive fraud, civil obstruction of justice, fraudulent concealments of swaths of medical data and records, including an entire set of mandatory records by a separate provider, EastCare EMS, rather than "insufficient recordkeeping" of "some medical records." But according to the district court, equitable estoppel did not apply and dismissal was proper because Appellants "have not shown" that CHA's misconduct has caused Appellants to miss the filing deadline, placing the cart before the horse and citing to a summary judgment case in a wrongful termination case to justify pre-discovery dismissal here. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). The question whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 313 N.C. 488, 491, 329 S.E.2d 350, 352 (1985). Appellants need to "show" an exception to the statute of limitations after Appellee CHA has asserted the statute of limitations as an affirmative defense. *State Farm Fire & Cas. Co. v. Darsie,* 161 N.C.App. 542, 547, 589 S.E.2d 391, 396-97 (2003), *disc. review denied,* 358 N.C. 241, 594 S.E.2d 194 (2004). When "there are facts in dispute as to the existence of the elements of equitable estoppel, the issue of estoppel is for the jury." *Friedland v. Gales,* 131 N.C.App. 802, 809, 509 S.E.2d 793, 798 (1998). CHA is "equitably estopped from

using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." *Id.* at 806. The essential elements of equitable estoppel are: "(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice." *Parker v. Thompson-Arthur Paving Co.,* 100 N. C. App. 367, 370, 396 S.E.2d 626, 628-29 (1990)). Actual fraud, bad faith, or an intent to mislead or deceive are not needed for the doctrine of equitable estoppel to apply. *Duke Univ. v. Stainback,* 320 N.C. 337, 341, 357 S.E.2d 690, 692 (1987). CHA's alleged misconduct lulled Appellants into accepting Appellees' jointly maintained false account of the Decedent's unfortunate, albeit grave, "accident," causing them to delay assertion of their rights to wrongful death damages. *Duke University v. St. Paul Mercury Ins. Co.*, 384 S.E.2d 36, 95 N.C. App. 663, 672-673 (N.C. App. 1989).

As to equitable tolling[5], whereas state law establishes the applicable statute of limitations, accrual of the statute of limitations is a matter of federal law. Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1162 (4th Cir. 1991). Under Federal law, a cause of action accrues when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995). Several days after their Mother's death, Appellants diligently, and repeatedly, inquired about the details of the Decedent's death as contained in her medical records. After repeated requests, the CRMC ultimately provided its partial .pdf version of the Decedent's records on or about November 8, 2022, together with a CD with a few radiology scans—some from the OBH and some from the CRMC: other than 2 OBH scans, the CRMC/CHA refused and repeatedly failed to provide the Decedent's transfer records—the entire OBH file and the entire EastCare file. Plaintiffs have never seen any ambulance records from EastCare. Through concealing essential parts of the medical records, besides its own falsifications of

---

[5] Contrary to the court's assertion that it declines to expand North Carolina law, North Carolina court have discussed the tolling of a statute of limitations due to tortious conduct, e.g. *Fox v. City of Greensboro*, 279 N.C.App. 301, 866 S.E.2d 270 (N.C. App. 2021); *Hewes v. Wolfe*, 74 N.C. App. 610, 614, 330 S.E.2d 16, 19 (1985) (allegations that the defendant acted "for the purpose of injuring and destroying the credit business of the plaintiffs and in general to oppress the plaintiffs" were sufficient to survive a motion to dismiss).

medical data, Appellee CHA kept Appellants unaware of CRMC's abysmal failures to render adequate transfer and adequate care until as late as November 8, 2022. CHA consistently labeled the Decedent's wrongful death as an unfortunate "accident" and went through great efforts, even fraud and civil obstruction of justice, to preserve the fictitious account of the Decedent's excellent, dedicated care. Because of CHA's civil obstruction of justice and its failure to preclude the OBH's fraud and civil obstruction of justice, the latter carried out in civil conspiracy with CHA, Plaintiffs were blinded to CHA's excessive failures which further caused their Mother's wrongful death. CHA's proposal, fully embraced by the district court, that a plaintiff must discover fraudulent concealments only after the expiration of the statute of limitations to be able to claim equitable tolling, makes no sense. Under his scenario, if a plaintiff discovers a defendant's fraud 1 day before the expiration of the statute of limitations, equitable tolling does not apply. "The purpose of the fraudulent concealment tolling doctrine is to prevent a defendant from "concealing a fraud, or ... committing a fraud in a manner that it concealed itself until" the defendant "could plead the statute of limitations to protect it." Bailey v. Glover, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874). Thus, pursuant to this doctrine, "when the fraud has been concealed or is of such a character as to conceal itself," and the plaintiff is not negligent or guilty of laches,

**the limitations period does not begin to run until the plaintiff discovers[6] the fraud**." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 126 (4th Cir. 1995). CHA's proposal that the statute of limitations as to CHA did not begin to run on November 8, 2022, because that date was before January 22, 2024, is contrary to this Court's long-established precedent.

A district court should not "conjure up questions [or defenses] never squarely presented to them" or attempt to "construct full blown claims [or defenses] from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (bracketing mine). In this regard, a court should not assume the "improper role of an advocate." *Id*. Appellants have not alleged that the district court's prohibition against electronic filing of Appellants' complaint is basis for either equitable estoppel or equitable tolling, albeit it demonstrates the Eastern District's unwillingness to allow represented and non-represented parties equal access to justice (out of 94 U.S. District Courts, only 8 don't allow pro se

---

[6] Actual notice requirement and awareness of sufficient facts to state a claim. *See, e.g.. Go Comput., Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) (explaining that a plaintiff may not invoke fraudulent concealment if he has discovered "facts which are the basis of a claim"); *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) ("facts that are the basis of the plaintiff's claim"); *Pocahontas Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211, 218 (4th Cir. 1987) ("facts which are the basis of a claim"); *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976) ("facts which are the basis of his cause of action")

electronic filing). According to the court, there was no fraudulent concealment because "plaintiffs assert they were ready to file their complaint January 18, 2024, and they signed and dated their complaint January 20, 2024" but were prevented from filing by January 22, 2024 solely by their lack of access to the CM/ECF system (also citing to the Original Complaint (DE 1 at 51) even though once amended[7], the original pleading is null and no longer performs any function in the case). Neither have Appellants alleged "latent injury" during continued treatment under N.C. Gen. Stat. § 1-15(c) so that to overcome their 1-day delay in filing suit: the court simply adopted another of CHA's creative proposals that because North Carolina's § 1-15(c) latent injury statute uses the word "discovery" (same word as in "discovery rule" for accrual of cause of action), Appellants must have alleged a "latent injury" not discovered after the expiration of the statute of limitations.

CHA's response fails to present any argument or applicable precedent to absolve that the district court's misapplication of facts and law in concluding lack of fraudulent concealment, lack of equitable estoppel and lack of equitable tolling.

---

[7] The court knew that "an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)", but continued to refer to the original complaint, e.g. discussing HIIPAA violations not alleged in the amended complaint. DE 124, DE 99 (order to file corrected amended complaint about 2 months after the amended complaint).

### 3.    CHA's Proposal of Bulk Categorization of Nearly All Claims as Wrongful Death Claims Also Lacks Support in Fact or Law

According to CHA, the district court did not err in subsuming gross negligence with conscious and intentional disregard of and indifference to the rights and safety of others, "EMTALA violations and violations of HIPAA-established and EMTALA-established duties," "intentional infliction of emotional distress," and "corporate negligence and negligent supervision" under the wrongful death claim. However, the precedent relied by the district court for subsuming nearly all claims under wrongful death deal with personal injury claims: *Bolick v. S. Ry. Co.*, 138 N.C. 370, 372, 50 S.E.6 689, 689 (1905) (holding "action for personal injury *State Auto Ins. Co. v. Blind*, 185 N.C. App. 707, 711, 650 S.E.2d 25, 28 (2007) (holding "common law negligence action pursuant to North Carolina's survivorship statute, N.C. Gen. Stat. § 28A-18-2(b) (setting forth "[d]amages recoverable for death by wrongful act," including "expenses for care, treatment and hospitalization incident to the injury resulting in death," "pain and suffering of the decedent," the "monetary value of the decedent," and "punitive damages"). Just because punitive damages are recoverable under the North Carolina Wrongful Death Act, it does not mean that any and all claims with punitive damages are encompassed by the latter. The court fully disregarded Appellants' allegations about corporate failures not encompassed by the Decedent's medical care, e.g. to ensure complete and truthful

records, ensure EMTALA and HIPAA compliance, ensure truthful and timely record disclosure, prevent fraudulent hospital accreditations. Appellee CHA's contentions that Appellants did not use the phrases "participating hospital" and "failure to transfer medical records between the providers" invalidate Appellants' EMTALA claim is another example of stringing words out of context and claiming failure to state a claim.

## IV.   CONCLUSION

Based on the foregoing, Appellants pray that this Court reverse the district court's dismissal of their complaint and remand to a different judge with a different judicial assistant for further proceedings.

Respectfully submitted by,

/s/, Petra D. Fist                                    /s/, Blagomir Shkodrov

Petra D. Fist/Pro se                             Blagomir P. Shkodrov/Pro se

July 10, 2025

## CERTIFICATE OF SERVICE

I, Petra D. Fist, hereby certify that on July 10, 2025, the foregoing Appellants' Informal Reply Brief to the Response Brief by Appellee Chesapeake Hospital Authority is being filed with the Clerk of Court via the CM/ECF system. All Appellees participate in the CM/ECF system, which automatically and simultaneously transmits to them each of Appellants' filing, including the instant Informal Reply Brief. Wherefore, no separate service was completed.

/s/, Petra D. Fist

Petra D. Fist/Pro se

# APPENDIX

Excerpt of DE 97: "The Fourth Circuit Court of Appeals has not entered a precedential decision that directs this Court to dismiss an action by a personal representative of an estate with creditors, especially potential creditors holding disputed, potentially invalid claims—it does not make much sense to undertake payment of the bills of a medical provider who had caused and/or contributed to the death of Plaintiffs' mother. Contrary to CHA's attorney, who insists on dismissal of Plaintiffs' estate claims "without any further analysis" because there might be creditors with or without valid claims, other Circuit Courts of Appeals who have entered decisions on the issue of creditors and personal representative's capacity to sue under particular circumstances, have done so in jurisdictions where the lawsuit proceeds would be assets of the estate so that to protect the existing interests of a third party with legitimate claims, e.g. a mortgage company, or shareholders, otherwise unprotected by law. *See*, e.g. *Iriele v. Griffin*, 65 F.4th 1280 (11th Cir. 2023) (not a wrongful death case—a case for deliberate indifference by prison officials' to Iriele mother's medical needs—there was an actual Estate with real estate encumbered by mortgage and 3 other beneficiaries besides the Plaintiff); *Pridgen v. Andresen,* 113 F.3d 391 (2d Cir.1997) (not a wrongful death case—a pro se appeal on judgment for shareholders where the husband died during the appeal); *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 897

(2d Cir. 2019) (not a wrongful death case—a case alleging unfair trade practices and plaintiffs allowed to proceed pro se: "Connecticut's substantive law will not be affected by permitting Pappas to file motions, conduct depositions, or represent the estate at trial."); *Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 171 (3d Cir. 2018) (not a wrongful death case—a case for excessive use of police force; pro se appeal by the grandmother on behalf of the sole beneficiary of the deceased: the Third Circuit acknowledged in a footnote that other Courts have considered the presence of creditors in their holdings but abstained from making this footnote a part of its holding); *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 211 (5th Cir. 2016) (the mother of an individual found by the EMT in the street with a gunshot wound can sue under Texas wrongful death statute for untimely response, untimely transfer and negligent medical care regardless of whether she was the sole beneficiary or whether her deceased son had any creditors: unlike North Carolina, Texas has separate wrongful death and survival statutes. Tex. Civ. Prac. & Rem. Code §§ 71.002(b), 71.021(b). "An action to recover damages as provided by this subchapter [wrongful death] is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." *Id.* § 71.004(b). Survival actions, on the other hand, are for the benefit of the estate—wherefore, a personal representative cannot represent an actual estate with other beneficiaries or creditors in a survival action); *Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir. 2007) (not a

wrongful death case—a case by the parents of disabled child for alleged violations of right to free and adequate public education: the Court held that the parents cannot sue when there were 4 siblings/ other beneficiaries because in "Illinois, personal injury suits survive the plaintiff's death and inure to the benefit of the plaintiff's estate. 755 ILCS 5/27-6; the Court explicitly declined to rule on the issue whether a sole beneficiary's legal action would hinge on the presence of creditors to the estate); *Jones v. Corr. Med. Servs. Inc.*, 401 F.3d 950, 952 (8th Cir. 2005) (another survival action where plaintiff was not the only beneficiary and could not represent the interests of other beneficiaries or the estate, because in Arkansas the benefits of a survival action, unlike the benefits of a wrongful death action, flow to the estate. Ark. Code §§ 16-62-101; 16-62-102); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (not a wrongful death action—a case under KY statute which allows the child of a deceased to sue the party that committed the killing for "careless, wanton, or malicious use of a deadly weapon, not in self-defense….": the deceased girlfriend and mother of the deceased's son was not allowed to sue because she was not the sole beneficiary*); Reshard v. Britt*, 839 F.2d 1499 (11th Cir. 1988) (affirming by operation of law as a result of an equally divided en banc court the district court's ruling that estate representatives could not sue where there are other beneficiaries because in Florida an action for wrongful death "shall be brought by the decedent's personal representative who

shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act." Fla. Stat. § 768.20). This Court has indicated that federal law governs over the substantive issue of the Plaintiffs' right to sue and to receive some measure of justice for the wrongful death of their mother. There is no precedent governing this Court, or any other holding by any U.S. Circuit Court of Appeals in a case with a wrongful death statute similar to the NC statute that has prohibited a personal representative of a paper estate with potential creditors to sue….This is hardly a directive for this Court to expeditiously dismiss the instant wrongful death case, filed pursuant to North Carolina law where wrongful death proceeds are not assets of an estate, should there be unpaid bills to providers who have either caused or contributed to our Mother's death under outrageous circumstances." DE 97 at 3-6.